IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

VINCENT K. GRAHAM         *

    Petitioner,         *

v         *    Case No.: GJH-16-2895

WARDEN OF FCI-CUMBERLAND         *

    Respondent.         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Vincent K. Graham brings this petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, naming as Respondent the Warden of FCI-Cumberland. Graham alleges that he was not afforded due process during a hearing that resulted in his good time credit being revoked. Pending before the Court is Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 11. Graham opposes the motion. ECF No. 14, ECF No. 15. No hearing is necessary to resolve the matters pending in this case. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Respondent's motion, construed as a Motion for Summary Judgment, shall be granted and the Petition shall be dismissed.

**I.    Background**

Vincent Graham is an inmate committed to the custody of the Federal Bureau of Prisons ("BOP") and incarcerated in Federal Correctional Institution-Cumberland ("FCI-Cumberland"). He asserts that disciplinary proceedings filed against him that resulted in revocation of good

conduct time were improper and seeks restoration of the good conduct time and expungement of the charges from his prison record. ECF No. 1; ECF No. 5.[1]

### A. Graham's Allegations

Graham claims that on December 10, 2015, while he was incarcerated at FCI-Allenwood, he was assaulted by another inmate. ECF No. 1 at 6.[2] He states the assault occurred at 1:30 a.m., while he was climbing down from the top bunk to use the restroom. *Id.* He explains that the cell housed a total of six men and is located in the Special Housing Unit ("SHU"). *Id.* Graham was examined by medical staff later in the morning on December 10, 2015. He claims that, following that exam, SIS Lt. Prutzman threatened "to stick me with a shot" because Graham failed to cooperate with the investigation of the assault. *Id.* Graham relates that he was never served with an Administrative Detention Order. *Id.*

On January 8, 2016, Graham was served with an incident report and claims that Prutzman "falsified material facts" when he claimed that Graham admitted he was involved in a physical altercation. Graham states that he never admitted any involvement in an altercation and insists he was the victim of an assault. *Id.* He further states that his assailant was "allowed to be discharge[d] earlier than his scheduled release date and prior to our DHO hearing." *Id.* After a hearing, Graham was found guilty of fighting with another person. *Id.*

On February 10, 2016, during a tour of the SHU by the Warden, Graham claims that Prutzman stopped at his cell and said, "I told you I was going to stick you with a shot." ECF No. 1 at 6. Prutzman then laughed and walked away. *Id.* Graham claims that on February 24, 2016, Prutzman again stopped at his cell during the warden's tour of the SHU and said, "I guess I won't be getting a Christmas card from you this year." Prutzman then laughed and walked away.

---
[1] The Supplemental Petition filed at ECF No. 5 appears to be identical in all relevant respects to the petition.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*Id.* On March 2, 2016, Graham claims that Prutzman stopped at his cell, stared at Graham's "private parts," and said, "he wants me to make love to him!"[3] *Id.* Prutzman began laughing. *Id.*

Graham asserts that Prutzman began taunting him after he was found guilty on the incident report written by Prutzman. Prior to receiving the incident report and during the time Graham was awaiting a hearing, Prutzman never stopped at Graham's cell nor did he harass Graham. *Id.* Graham bases his claim for relief on: (1) the assertion that he never received a copy of the Administrative Detention Order, (2) the allegation that Prutzman falsified material facts during his investigation, and (3) that the sanctions imposed violated BOP policies and regulations. *Id.* at 7–8.

### B. Respondent's Motion

Respondent's Motion provides information regarding the Inmate Disciplinary Process as authorized by 18 U.S.C. § 4042 and 28 C.F.R. § 500, *et seq*, which the Court summarizes here. ECF No. 11 at 2–4. When BOP staff reasonably believe that an inmate has violated a regulation, an incident report is prepared. 28 C.F.R. § 541.5(a). The inmate suspected of the violation is provided a written copy of the charges against him usually within 24 hours of the time that staff first becomes aware of the inmate's involvement. *Id.*

At the time the incident report is provided to the inmate, an investigating officer reads the charges to the inmate and asks for the inmate's statement while advising the inmate of their right to remain silent and that silence may be used against them (a prisoner's silence alone, however, cannot be used as the sole basis to find him guilty). The investigating officer is tasked with investigating the incident, recording all steps and actions taken on the incident report, and

---

[3] Verbal abuse of inmates by guards, without more, states no claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *see also Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim).

forwarding all relevant materials to the Unit Disciplinary Committee ("UDC") for an initial hearing. 28 C.F.R. § 541.5(b).

The UDC usually holds an initial hearing within five working days from the date the incident report is issued. 28 C.F.R. § 541.7(b). The inmate is entitled to be present at the initial hearing, excluding deliberations by the committee or where security of the prison would be compromised by the inmate's presence. 28 C.F.R. § 541.7(d). At the hearing, the inmate is entitled to make a statement and present documentary evidence on his behalf. 28 C.F.R. § 41.7(e). The UDC's decision following the initial hearing must be based on at least some facts. Where there is conflicting evidence, the decision is based on the greater weight of the evidence. 28 C.F.R. § 541.7(e).

The UDC must decide whether the inmate committed the prohibited act charged or one similar to it, did not commit the prohibited act as charged or refer the case to the Disciplinary Hearing Officer ("DHO") for further proceedings. 28 C.F.R. § 541.7(a). A case is referred to the DHO for further proceedings when the alleged violation of BOP rules is serious and warrants consideration of major sanctions. 28 C.F.R. § 541.17(f). When this referral is made, the UDC forwards copies of all relevant documents to the DHO with a brief statement of reasons for the referral and any recommendations for an appropriate resolution if the DHO finds the inmate committed the prohibited act. 28 C.F.R. § 541.7(g).

When a case is referred to the DHO, the inmate is advised of his rights at the hearing and is given the opportunity to indicate a choice of staff representative and the names of any witnesses they want to call as well as a description of the testimony those witnesses are expected to provide. 28 C.F.R. § 541.8(d)–(e).

At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence, to submit the names of requested witnesses, and to have them called to testify. If proposed witnesses or documentary evidence are determined to present a danger to the security of the prison or to an individual's security, the requests may be denied. 28 C.F.R. § 541.8(f).

The DHO considers all evidence presented at the hearing and makes a determination based on at least some facts and where there is conflicting evidence, on the greater weight of the evidence. 28 C.F.R. § 541.8(f). The DHO must determine if the inmate committed the prohibited act as charged, committed a similar prohibited act or did not commit a prohibited act. 28 C.F.R. § 541.8(a). A report of the proceedings is prepared reflecting the advisement of inmate rights, the evidence relied upon by the DHO, the DHO's decision, the sanction imposed, and the rationale for the sanction. 28 C.F.R. § 541.8(h).

With regard to Graham's case, Respondent asserts that Graham was provided with a copy of the Administrative Detention Order[4] on December 10, 2015, the date it was issued. ECF No. 11-8; ECF No. 11-9.

On January 8, 2016, Graham received the Incident Report (2802582) charging him with violating Disciplinary Code 201 (fighting with another person) and 104 (possession of a weapon). ECF No. 11-4. The report states as follows:

> On January 8, 2016 at approximately 12:00 p.m. an SIS investigation was completed. It was determined that on December 10, 2015 at approximately 1:53 a.m., inmate Graham . . . and inmate [NAME REDACTED] engaged in [a] physical altercation in cell 901 – 903 of Unit 3A. Specifically, both inmates were striking each other with closed fists to the head and upper torso areas. Inmate Graham then grabbed a mop handle and struck inmate [NAME REDACTED] several times in the body area with it. The findings of this investigation are supported by both inmates' admittance to being involved in a physical altercation and inmate [NAME REDACTED] positive identification of inmate Graham using a mop handle as a weapon.

---

[4] The Administrative Detention Order simply notified Graham that an investigation into an unwitnessed cell fight was pending and he was being placed in the SHU. ECF No. 11-9.

*Id.* at 1. The Incident Report was, however, suspended because the incident was referred to the FBI for potential prosecution. *Id.* On January 13, 2016, the FBI released the report and declined prosecution in favor of BOP administrative sanctions. *Id.*

On January 15, 2016, the UDC referred the charge to the DHO due to the severity of the incident. ECF No. 11-4. Graham received a copy of his rights, requested a staff representative, and requested three witnesses: PA Pfirman, Inmate Ronald West, and Inmate Mahli Gray. ECF No. 11-5; ECF No. 11-6. Graham waived the request for witness Gray prior to the hearing. *Id.* Graham requested PA Pfirman as his staff representative, but because Pfirman was involved in the incident he could not serve as staff representative. Graham waived the request for a staff representative. ECF No. 11-7 at 1.

After the January 27, 2016 hearing, the DHO prepared a report stating what evidence was relied upon to find Graham guilty. ECF No. 11-7. Graham made a statement at the hearing indicating that at 1:30 a.m. he woke up to use the bathroom and as he was climbing down from his bunk "something went against my face and I dropped and fell and then I got kicked in my side." *Id.* at 1. Graham further stated that when he looked up he saw his assailant "doing something" near his locker. *Id.* Graham pushed the panic button and again felt something against his face. *Id.* He stated that he was holding onto his assailant "so I wouldn't get hit" and that he "saw a big stick." *Id.*

Graham's first witness, Inmate West, claimed that he was in his cell at the time of the incident and that he had no idea what happened. *Id.* Pfirman testified that he examined Graham after the incident, that Graham claimed he fell from his bunk and struck his face and that Graham "may have been hit by something" or fell and struck his face. *Id.* at 3.

The DHO also reviewed documentary evidence as a part of the hearing which included: the investigative report from Prutzman dated December 16, 2015; Memoranda written by Prutzman, Lt. J. Opperman, J. Raup, J. Lepley, T. Cox, T. Guyer, and S. Nicholas; photographs taken by Lt. Opperman dated December 10, 2015; and, injury assessment reports. *Id.* In reaching the conclusion that Graham was guilty of fighting with another person, the DHO relied on the investigative report from Prutzman which was corroborated by the other inmates housed in the cell where the incident took place. *Id.* Prutzman's investigative report indicates that Graham and the other inmate involved admitted to engaging in a fight. *Id.* Additionally, the DHO noted that he believed the information provided by staff because they derived no benefit from providing false information, and eye witness accounts indicated that both inmates were fighting. *Id.* at 5. The DHO noted that, "Graham was not forthcoming at the time of the incident to indicate he was involved in any physical altercation with another inmate," but the greater weight of the evidence supports the finding that "Graham committed the prohibited act of fighting with another person." *Id.* The DHO further found that the charge for possession of a weapon was unsupported and would be expunged from the report. *Id.*

In Prutzman's sworn declaration, he denies Graham's allegations that he falsified information as a part of the investigation into the December 10, 2015 incident. ECF No. 11-8 at 2. He also denies Graham's claim that he engaged in harassing behavior before and after the incident and states that the investigations he conducts include interviews of inmates, witnesses and staff, and monitoring of inmate phone calls and emails. *Id.* Prutzman states that he hand-delivered a copy of the Administrative Detention Order to Graham. *Id.*

7

## II. Standard of Review

A federal court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec.*

*Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

### III. <u>Analysis</u>

Prisoners retain rights under the Fourteenth Amendment's Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at

564–66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322 n.5.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Graham does not dispute that he received written notice of the charges against him, that he received a summary of the evidence relied upon, that he was afforded the opportunity to call witnesses, obtain representation, or have an impartial decision-maker evaluate his case. Graham's claim that he did not receive a copy of the Administrative Detention Order is not a claim that he did not receive notice of the charges against him; rather, it is a claim that a policy was violated. Even assuming his claim is true (which Respondent disputes), the failure to provide him with the order does not impact the due process he received for purposes of disciplinary proceedings resulting in the revocation of good conduct time.

Graham's claim that the other inmate, whom he names in his Opposition, was not punished but was instead released from prison is without support and does not weigh against the

decision of the DHO finding Graham guilty. The decision of the DHO was based in part on injury assessment reports and photographs. *See* ECF No. 11-7 at 3. Graham's assertion that he was merely a victim of an assault, a different account from the one he provided at the time of the incident, was clearly not supported by the evidence presented. Matters regarding credibility of the witnesses and the reliability of the evidence presented to the DHO are not issues that this Court may revisit.

Graham received notice and a hearing and was provided the opportunity to present evidence in his defense. The decision of the DHO was based on some evidence which is all that is constitutionally required. Moreover, the proceedings did not violate any of the applicable BOP rules for disciplinary hearings. As such, Graham received adequate procedural and substantive due process. Respondent is therefore entitled to summary judgment in his favor.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 11, will be granted. A separate Order follows this Memorandum Opinion.

9/19/2017
Date

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE